UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM BROWN, | CV F- 02-6094 AWI DLB P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| LT. J. CANADY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. section 1983. Pending before the Court is the amended complaint which plaintiff filed after the original complaint was dismissed for failure to state a claim.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc).

In the instant case, plaintiff brings action against the following employees of the California Correctional Institution (CCI)-Tehachapi: Correctional Lieutenant Canady, Lieutenant Brochu, Sergeant Blaylock, Officer Johnson, Counselor Guest, Lieutenant Stainer, Librarian Stanford, Officer Pazo, Sergeant Parriott, Sergeant Robertson, Officer Nelson, Officer Cantrell, Officer Press, Officer Salas, Officer Ebenal, and Officer Hudgerts. Plaintiff alleges the following facts which are predominantly the same allegations as the original complaint:

On December 25, 1999, following visitation, defendant Canaday required that plaintiff submit to a body cavity search and had plaintiff placed on contraband watch, or in plaintiff's words, "potty watch."

On June 12, 2001, after a conflict with defendants Yubeta and Press in the dining hall, plaintiff was subjected to a "pat-down" search and was then escorted to the program office, where the sergeant Blaylock and Lieutenant Brochu interviewed him. Plaintiff was placed in a holding cell and a body cavity search was conducted, but no contraband was found.

On July 3, 2001, Officer Johnson issued a CDC-115 against plaintiff for refusing to work, and requested that plaintiff be placed on "C-status." On July 25, 2001, plaintiff appeared before a Unit Classification Committee (UCC). At the UCC, Counselor Guest presented to Captain Carrasco a copy of the CDC 115 authored by Officer Johnson, which contained a hand-written guilty finding. The UCC was delayed until Carrasco received an original copy of the CDC 115 disposition. On July 31, 2001, plaintiff appeared before Lieutenant Haws regarding the 115, and presented evidence that the CDC 115 submitted by Guest had been dismissed. On August 8, 2001, plaintiff again appeared before the UCC, including Lieutenant Stainer, to determine if plaintiff should be placed on C-status. At the hearing, Guest told Stainer that plaintiff should be placed on C-status and that plaintiff had threatened to prosecute her for committing a felony. Defendant Stainer then informed plaintiff that he was being placed on C-status and refused to change his decision based on plaintiff's assertion that the CDC-115 had been dismissed.

On September 4, 2001, while at the law library, plaintiff asked Librarian Stanford for access to the library for the remainder of the week. Stanford denied plaintiff's request and stated the

warden allowed two hours per week for lockdown inmates.  On October 19, 2001, plaintiff received a court order setting a 30-day deadline.  On October 20, 2001, Stanford allowed plaintiff to attend the law library.  In the library, plaintiff was approached by Officer Pazo, who told plaintiff he had to leave, because C-status inmates could use the library only on Mondays and Wednesdays.  Sergeants Robertson and Parriott agreed with Pazo and ordered plaintiff to return to his cell.

On October 2, 2001, officers Nelson and Hammons conducted a search of plaintiff's cell.  Plaintiff told the officers to "place every piece of property back in order" after the search.  Following the search, the cell was left "in disarray and not in the order as plaintiff left it."  On October 15, 2001, Officers Nelson and Cantrell searched and "ransacked" plaintiff's cell.  On October 16, 2001, Officer Press searched plaintiff's cell.

On January 21, 2002, plaintiff's cell was searched and plaintiff was told to remain in the dayroom during the search, which lasted 45 minutes.  Plaintiff asked defendant Salas for entry to the cell, but his request was denied.  Officers Cantrell, Ebenal, McCoullough, and Roberts entered the dayroom.  Plaintiff approached officer Cantrell to ask him why the cell was searched, when "Cantrell abruptly grabbed his canister of O.C. pepper spray and ordered plaintiff and cellmate Reed to strip out."  A body cavity search was performed.  On returning to the cell, plaintiff observed that the cell had been "ransacked and left in disarray."

On February 24, 2002, officer Garcia gave a two-minute warning for "AM chow" and opened plaintiff's cell door.  Plaintiff "stood in front of the door to give his cell mate Reed an opportunity to complete his wash-up routine . . . Garcia shut the door on plaintiffs whole body, resulting in plaintiff having chest pain as well as a headache."  As plaintiff was going to the dining hall, "officer Garcia got on the intercom and threatened plaintiff with reprisals by saying if plaintiff was going to delay his program, he was going to make plaintiff's time 'rough.'"

I.  Eighth Amendment Claim Regarding Body Cavity Search

Plaintiff asserts that defendant Canaday violated his Eighth Amendment rights by ordering plaintiff to submit to a body cavity search and placing plaintiff on "potty watch," also known as contraband watch.

U.S. District Court
E. D. California

3

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Ninth Circuit has recognized that prisoners retain a limited right to bodily privacy grounded in the Fourth Amendment.  Michenfelder v. Sumner, 860 F. 2d 328, 333 (9th Cir. 1988).  However, limitations on the exercise of a prisoner's constitutional rights arise both from the fact of incarceration and from valid penological objectives.  Id. at 331 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)).

Although prison officials may conduct reasonable body searches of prisoners, the Eighth Amendment protects inmates from repetitive and harassing searches.  Hudson v. Palmer, 468 U.S. 517, 530 (1984).

There is no rule prohibiting prison officials from conducting body cavity searches such as those alleged in the complaint.  Plaintiff alleges that body cavity searches were conducted on December 25, 1999, June 12, 2001, and January 21, 2002.  Plaintiff alleges that prior to the searches, defendant correctional staff had reason to suspect that plaintiff may have contraband on his person. Plaintiff has not alleged that the searches were excessive or repetitive.  Because plaintiff has failed to allege facts to indicate the searches were repetitive or harassing, the Eight Amendment claim must be dismissed for failure to state a claim.

II.  Retaliation Claim

Plaintiff asserts that defendants Blaylock, Brochu, Stanford, Pazo, Robertson, Parriott, Salas, Cantrell, Ebenal, Nelson and Press retaliated against him by searching his cell on January 21, 2002, conducting the visual body search and confiscating his personal property.  Plaintiff alleges that the

actions on January 21, 2002 were taken in retaliation for plaintiff filing the present civil rights action against defendant Canady and inmate appeals.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (*quoting* Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff has not alleged the existence of any evidence to indicate that defendants' conduct on January 21, 2002 was in any way related to the filing of this lawsuit. Indeed, plaintiff filed this lawsuit on September 9, 2002, well after the alleged retaliatory conduct. Plaintiff has further failed to link defendants Blaylock, Brochu, Stanford, Pazo, Parriott, Nelson and Press to any of the alleged retaliatory conduct. Plaintiff therefore fails to state a cognizable retaliation claim against these defendants.

Plaintiff also asserts that defendants Guest, Johnson, Stainer conspired to deprive him of his constitutional rights by retaliating against him for filing inmate appeals. Plaintiff alleges these defendants deliberately and intentionally conspired to place plaintiff on C-Status following his choice to exercise his First Amendment Right to access the courts. Plaintiff has not alleged the existence of any evidence to indicate that his placement on C-status was in retaliation for the exercise of a protected right. He therefore fails to state a cognizable retaliation claim against defendants Guest, Johnson and Stainer.

## VII.  Conclusion

In summary, plaintiff fails to state any cognizable claims for relief against the named defendants and therefore the Court HEREBY RECOMMENDS the amended complaint be dismissed in its entirety.  The Court does not recommend that plaintiff be given an opportunity to amend the complaint again because he was granted leave to amend previously and was unable to cure the deficiencies of the original complaint.  Plaintiff was advised that "[f]ailure to cure the deficiencies will result in dismissal of this action without leave to amend."

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     April 6, 2006            /s/ Dennis L. Beck
3b142a                              UNITED STATES MAGISTRATE JUDGE